IN THE UNITED STATES DISTRICT COUNT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COREY LOVETTE LITTLE, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) 1:18CV138 |
| v. | ) 1:16CR209-2 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Petitioner Corey Lovette Little, Jr., a federal prisoner, has brought a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket Entry 63.) Petitioner pled guilty, pursuant to a plea agreement, to two counts of interference with commerce by robbery; and one count of carrying and using, by discharging, a firearm in relation to a crime of violence; and was sentenced to 198 months of imprisonment. (Docket Entries 1, 13-14, 21; Minute Entries 9/8/2016 and 2/22/2017.) He did not file an appeal, but instead filed the instant motion. The Government filed a response (Docket Entry 92) and Petitioner, in turn, filed a reply (Docket Entry 95) and a motion to amend (Docket Entry 121). The Government has also filed a motion to hold this case in abeyance (Docket Entry 122), to which Petitioner has filed a response (Docket Entry 124) and a supplement (Docket Entry 125). The matter is now before the Court for a ruling. *See* Rule 8, Rules Governing Section 2255 Proceedings.

## PETITIONER'S GROUNDS

Petitioner's § 2255 motion raises four grounds for relief. In Ground One, Petitioner asserts that counsel was constitutionally ineffective for "failing [to] challenge the indictment on Multiplicity" and for failing to investigate Petitioner's case. (Docket Entry 63, Ground One.) In Ground Two, Petitioner asserts that counsel was ineffective "for failing to inform Petitioner of the true nature of the charges and erroneously advising Petitioner to plead guilty." (*Id.*, Ground Two.) In Ground Three, Petitioner contends that counsel was ineffective for failing to object to the presentence report and for failing to argue for a lesser sentence. (*Id.*, Ground Three.) In Ground Four, Petitioner contends that counsel was ineffective for failing to file a notice of appeal as requested. (*Id.*, Ground Four.) As explained in greater detail below, Petitioner's first three grounds for relief have no merit, and Petitioner's fourth ground for relief requires an evidentiary hearing.

## FACTUAL BACKGROUND

The factual basis supporting Petitioner's guilty plea is as follows:

> On April 17, 2015, Shiquane Moore (Moore) drove Bryant Rene Narcisse (Narcisse) and COREY LOVETTE LITTLE, JR. (LITTLE) to the Three Boys Citgo located at 5000 Old Walkertown Road, Winston-Salem, North Carolina. Narcisse and LITTLE entered the store with their faces covered and each carried a firearm. Narcisse wore a skull looking mask and carried a rifle. He also carried a small black and red school bag. Once inside, Narcisse demanded the clerk operating the cash register to put the money in the bag. After the clerk placed the money in the bag, Narcisse asked him to open the safe. When the clerk indicated that he could not open the safe, Narcisse shot him in the leg.

2

LITTLE stood by the door and held it open to prevent them from being locked inside the store. Moore drove Narcisse and LITTLE to the convenience store but did not go inside.

The robbery and discharging of the firearm is captured on the store's surveillance system.

On April 18, 2015, Moore drove Narcisse, LITTLE, and Deshawn Aiken (Aiken) to a Dollar General store located at 3150 New Walkertown Road, Winston-Salem, North Carolina. Narcisse, LITTLE, and Aiken each had their faces covered. Narcisse and LITTLE both entered the store while carrying firearms. (Narcisse carried and used the same rifle from the day before). Aiken went inside the store, but he did not carry a firearm. Again, Narcisse demanded the clerk at the cash register to give him money. Once the money was handed over, they left the store and Narcisse accidentally discharged the firearm. The gun discharged while they were running out of the store.

The surveillance video from the store showed Narcisse walking inside the store, and an employee attempting to hit Narcisse with a broomstick. When the employee made this gesture, LITTLE punched her in the back of the head. This punch resulted in LITTLE injuring his hand and later required medical treatment. Moore drove LITTLE to Wake Forest University Baptist Medical Center to where he received treatment for his injured hand. Detectives sought and received a Court Order for those medical records. The medical records indicate that on April 19, 2015, at 2:16 a.m., LITTLE received treatment for a "fracture of fifth metacarpal bone" of his right hand. Moore told investigators LITTLE stated he broke his hand because "he beat up a lady."

On April 29, 2015 and April 30, 2015, a confidential source (CS 1) gave a statement to law enforcement regarding these two robberies . . . . .

In regards to the Three Boys Citgo robbery, CS 1 told investigators that he saw Narcisse and LITTLE with firearms before and after the robbery. CS 1 reported that Narcisse wore the mask that looked like a skull. CS 1 reported that Narcisse

3

stated that he should have killed the clerk for lying to him about opening the safe.

The firearm that Narcisse used in both robberies was recovered at the residence of Quentin Thompson (Thompson). Officers went to Thompson's residence to confirm that Narcisse had used Thompson's firearm. When officers arrived at Thompson's residence, Thompson stated, "Is this about the rifle Narcisse dropped off?" He then allowed officers into his residence where they located the rifle. Ballistics from both crime scenes, Three Boy Citgo and Dollar General, matched the recovered firearm.

The firearm was a Winchester 190, .22 caliber rifle, serial number 604263.

On December 28, 2015, the firearm was test-fired and found to be in operable condition.

On December 30, 2015, ATF Nexus expert Special Agent Matthew Amato determined the Winchester, model 190, .22 caliber, semi-automatic rifle; serial number 604263 firearm was manufactured in the state of Connecticut and must have traveled in interstate commerce. Special Agent Amato has previously qualified as an expert regarding the determination of the interstate nexus of firearms and ammunition.

(Docket Entry 13.)

## DISCUSSION

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's

4

unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would have not pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

## **Ground One**

Petitioner first contends that counsel was constitutionally ineffective by failing to challenge the indictment on the grounds of multiplicity. (Docket Entry 63, Ground One.) As explained by the Fourth Circuit:

> Although the terms "multiplicity" and "duplicity" are often confused, their meanings are distinct, and the remedies for their commission disparate. On the one hand, duplicity is "the joining in a single count of two or more distinct and separate offenses." 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982). Multiplicity, on the other hand, is "the charging of a single offense in several counts." *Id.* The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense; hence reversal is warranted if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments. *Id.* § 145, at 524-26. Even where the defendant has suffered multiple convictions and faces multiple sentences, the appropriate remedy is to vacate all of them but one. *See Ball v. United States*, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 1673-74, 84 L.Ed.2d 740 (1985).

5

*United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993). "The test for multiplicity is whether each count charged 'requires proof of a fact which the other does not.'" *United States v. Jameson*, 972 F.2d 343 (4th Cir. 1992) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *see also United States v. Haynes*, 474 F. App'x 337, 338 (4th Cir. 2012) ("Haynes' pro se double jeopardy argument also fails. Although he was convicted twice under the same statute of conviction, he has not been punished twice for the same offense. His convictions arose from distinct offenses—the brandishing of firearms during robberies of different gas stations on different days.").

There was no meritorious multiplicity or double jeopardy objection for counsel to pursue here. Petitioner pled guilty to two counts of interference with commerce by robbery that occurred on different dates and at different locations. (Docket Entries 1, 13-14.) The first (Count One) occurred at Three Boys Citgo located at 5000 Old Walkertown Road, Winston-Salem, North Carolina on April 17, 2015. (*Id.*) The second (Count Four) occurred at Dollar General located at 3150 New Walkertown Road, Winston-Salem, North Carolina on April 18, 2015. (*Id.*) Petitioner also pled guilty to one count (Count Two) of carrying or use by discharging a firearm during and in relation to a crime of violence, the robbery of the Three Boys Citgo. (*Id.*) The remaining count (Count Five) naming Petitioner—which was dismissed—was also for discharging a firearm during and in relation to a crime of violence, the robbery of the Dollar General. (Docket Entry 21 at 1.) The charged crimes were distinct and were not multiplicitous. *See Bernal v. United States*, No. 1:14CR23-2, 2016 WL 4446150, at *10 (M.D.N.C. May 10, 2016) ("Petitioner's sentences on Counts Three and Five

6

do not constitute 'multiple sentences for a single offense.' [T]he sentence on Count Three punishes her for the offense of aiding and abetting the brandishing of a firearm during and in relation to the robbery of a business on February 8, 2013, and the sentence on Count Five punishes her for the separate offense of aiding and abetting the brandishing of a firearm during and in relation to a second robbery of a different business on February 10, 2013. Ground Four thus fails as a matter of law.").

In Ground One, Petitioner also contends that counsel was ineffective for failing to properly investigate his case. (Docket Entry 63, Ground One.) Specifically, Petitioner asserts a

> number of victims gave law enforcement different descriptions of the robbery suspects that were on videotape with masks, or such as height, weight, and tattoos, even more compelling, the document in the discovery, the "police report," stated that Corey Lovette Little, Jr. "did not have a firearm at all" at none of the alleged robberies. . . .
> 
> Moreover, had Counsel interviewed the witnesses "victims" which the alleged robbers were wearing masks, the victims could not have identified Petitioner as the person who robbed them.

(Docket Entry 95 at 4; *see id.* at 7-8.)

This sub-ground in Petitioner's first ground for relief fails for a number of reasons. First, Petitioner's assertions regarding conflicting witness statements are vague, conclusory, and unsupported, and his sub-ground fails for this reason alone. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). Petitioner does not identify any particular victims, nor does he identify any

7

specific victim statement. Moreover, Petitioner's assertion that the victims could not have identified him is likewise conclusory and unsupported. *Id.*

Second, there was ample evidence that Petitioner participated in, and carried a firearm during, both the April 17 (Three Boys Citgo) and April 18 (Dollar General) armed robberies. For example, the robbery and discharging of the firearm during the April 17 robbery was captured on the store's surveillance system, where both the robbers were armed. (Docket Entry 13 at 1-2.) Likewise, the April 18 robbery was also caught on video. (*Id.* at 2-3.) One of the robbers injured his hand striking a female victim in the head during the April 18 robbery. (*Id.*) Petitioner was treated at a hospital soon thereafter for a hand injury consistent with this evidence, where he admitted that he broke his hand because "he beat up a lady." (*Id.* at 3.) Additionally, a confidential source likewise implicated Petitioner in the two robberies. (*Id.* at 3.) Far from tending to exonerate Petitioner, a full investigation of this matter presents ample evidence of his guilt.

Third, as noted, Petitioner asserts the existence of a police report indicating that he did not have a firearm during either of the two robberies. Petitioner has not provided this report, or meaningfully described its contents, nor has he identified who wrote the report or who purportedly stated that he did not have a firearm during the robberies. Petitioner's assertion is vague, conclusory, and unsupported. *See Nickerson*, 971 F.2d at 1136. Additionally, as detailed above, there is a great deal of evidence of Petitioner's participation in the crimes in question. Consequently, there is no reason to believe that the existence of

8

such a police report, or its presence in the record, would have changed the outcome of this proceeding. For all these reasons, Petitioner's ground for relief has no merit.[1]

## Ground Two

Petitioner next faults counsel for not informing him of the "true nature" of the charges and of "erroneously advising [him] to plead guilty." (Docket Entry 63, Ground Two.) Petitioner further asserts that his plea agreement was not entered into knowingly or voluntarily. (*Id.*) This argument is also without merit.

Where, as here, "a defendant is represented by counsel when making his guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. [T]o rebut that strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent." *United States v. Custis*, 988 F.2d 1355, 1363 (4th Cir. 1993) (citations omitted). "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing Court in accepting a plea constitute a formidable barrier to attacking the plea." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996) (citations, quote marks omitted). Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without a hearing, dismiss any § 2255 motion that relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22. *See also United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding no prejudice on a claim that defense counsel failed to advise defendant he could be sentenced as a career offender since

---

[1] To the extent Petitioner restates this multiplicity/double jeopardy argument or the failure to investigate argument elsewhere in his pleadings, they fail for the same reasons set forth above.

"if the trial court properly informed Foster of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him").

Here, Petitioner's statements at his change of plea hearing pose a considerable obstacle to his assertions of ineffective assistance of counsel. At his Rule 11 hearing, Petitioner was placed under oath and stated that he had reviewed a copy of the indictment with counsel, that he understood the indictment and the charges against him, and that he fully discussed with counsel the charges in the indictment and the case in general. (Docket Entry 90 at 3-4.) Petitioner also stated that he discussed with counsel possible defenses and that he was fully satisfied with the services of counsel. (*Id.* at 4.)

The Court then summarized the plea agreement for Petitioner, including the part of the plea agreement where Petitioner stipulated and agreed for the purposes of Count Two that the firearm was discharged during the commission of the crime of violence. (*Id.* at 5.) The Court also pointed out that the plea agreement called for Petitioner to give up his right to appeal, or to challenge on collateral review, the conviction or the sentence, except in cases of ineffective assistance of counsel, prosecutorial misconduct, a sentence in excess of the statutory maximum, or a sentence based on an unconstitutional factor. (*Id.* at 6.) Petitioner agreed with the summary. (*Id.*) Petitioner also informed the Court that he understood all of the terms of the plea agreement, that he had had enough time to review it with counsel, and that it represented the entire agreement between him and the Government. (*Id.* at 6-7.) Petitioner then agreed that he had stipulated that a firearm had been discharged during the offense, that he understood that it raised the mandatory minimum sentence from five to ten

10

years, and that only if the case were to proceed to trial, would the Government have to prove discharge beyond a reasonable doubt. (*Id.* at 8.) Petitioner also indicated that he understood that, by the terms of the plea agreement, he had agreed to waive his right to appeal or collaterally attack his sentence or conviction in all but a few limited circumstances. (*Id.* at 8.)

Petitioner also admitted that no one had made any threats or promises to him, other than those contained in the plea agreement, in an effort to get him to plead guilty. (*Id.* at 9.) Petitioner admitted further that no one had in any way attempted to force him to plea guilty. (*Id.* at 9.) Petitioner next admitted that he understood the penalties of the counts to which he was pleading guilty, up to twenty years of imprisonment for each robbery count, which could run either consecutively or concurrently, and a consecutive ten year to life sentence on the discharging a firearm during a crime of violence count. (*Id.* at 10-12.) The Court next explained how it would consult the advisory guidelines to determine his sentence, which Petitioner stated he understood. (*Id.* at 12.) Petitioner also stated that he understood that any estimate that counsel provided him about his guidelines range or sentence may ultimately be difference from his actual sentence. (*Id.* at 12-13.) Petitioner next indicated that he understood that if he did not plead guilty and instead went to trial, the Government would have to prove his guilt beyond a reasonable doubt. (*Id.* at 14.)

The Court then read the elements of the crimes to which he was pleading guilty to Petitioner. (*Id.* at 15-17.) Petitioner indicated that he understood these elements and understood that by pleading guilty he was admitting these elements as they were described in

11

the indictment. (*Id.* at 17.) Petitioner then pled guilty to all three charges, asserting he was, in fact, guilty. (*Id.* at 17-18.) The Court then found Petitioner fully competent and capable of entering an informed plea, that Petitioner was aware of the nature of the charges and the consequences of the plea, and that his guilty plea was knowing and voluntary. (*Id.* at 18.)

Next, Petitioner stated that he had reviewed the factual basis with counsel and that he agreed with it, with the exception of one phrase about four additional robberies beyond those to which he was pleading guilty. (*Id.* at 19.) The Court found the remainder of the factual basis sufficient to support the guilty-plea and adjudged him guilty. (*Id.*)

These admissions are fatal to Petitioner's assertions in Ground Two. (Docket Entry 63, Ground Two.) As demonstrated above, Petitioner entered into his plea agreement voluntarily, knowingly, and intelligently. Additionally, contrary to Petitioner's allegations (Docket Entry 63, Ground Two), prior to pleading guilty, he was well aware of the nature of the charges against him and he was aware that if he went to trial, the Government would have to prove the charges beyond a reasonable doubt. As further demonstrated above, any assertion by Petitioner that his guilty plea, his appeal waiver, or his waiver of collateral review, were not made knowingly, intelligently, and voluntarily is also contradicted by the record, as is any assertion that he was coached or forced into a plea against his wishes. Likewise, any contention that Petitioner did not participate in the two Hobbs Act robberies, was not responsible for having a firearm during the two robberies, or was not responsible for the discharge of a firearm during the Three Boys Citgo robbery, is without merit in light

12

of his stipulation that a firearm was discharged, and in light of the factual basis for his plea, which Petitioner admitted was accurate.

The Court notes further that Petitioner pled guilty to an indictment charging him in each count as both a principal and an aider and abettor.[2] (Docket Entry 1.) If he is contending that he did not understand aider and abettor liability, this argument would warrant no relief. Aiding and abetting is not a separate crime. *See, e.g.*, *United States v. Williams*, 941 F.3d 234, 236 (6th Cir. 2019) (concluding that district court was not required to advise defendant at change of plea concerning accomplice liability to satisfy the requirement of informing defendant of the nature of the charge because aiding and abetting is a theory of liability embodied in every federal indictment, whether charged or not, and not a distinct substantive crime). Moreover, even if Petitioner did not understand aider and abettor liability, no rational defendant in Petitioner's circumstances would, when fully informed of such liability, have rejected the plea agreement and gone to trial. Had there been a trial, Petitioner would—given the evidence—very likely have been convicted of both robberies and of both § 924(c) counts. The second § 924(c) conviction would increase his sentence by a mandatory twenty-five years. *See* 18 U.S.C. § 924(c)(1)(C)(i). This is, in fact, what happened to Petitioner's co-defendant, Narcisse, who went to trial, was convicted, and was sentenced to more than 400 months of imprisonment. For all of these reasons, Petitioner's second ground for relief also fails. (Case No. 1:16CR209-1, Docket Entry 102.)

---

[2] For this reason, Petitioner did not need to possess or discharge a firearm personally to be guilty of Hobbs Act robbery or of discharging a firearm during a Hobbs Act robbery. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

13

### Ground Three

Petitioner next contends that counsel was ineffective for failing to file objections to the presentence investigation report, particularly on the grounds of multiplicity, and for failing to argue for a lesser sentence. (Docket Entry 63, Ground Three.) This argument also fails. As explained above, any multiplicity or double jeopardy argument was frivolous, as was any argument that Petitioner was not responsible for possessing a firearm during the Hobbs Act robberies in question, or for discharging a firearm during a crime of violence, either as principal or as an aider and abettor. Beyond this, at sentencing, Petitioner admitted that he had reviewed the presentence report and stated that he agreed with it. (Docket Entry 91 at 2.) Later during his sentencing hearing, when given the chance to speak, Petitioner did not raise any objections, but instead stated "I'd just like to take responsibility for my actions, and I apologize for my action I did in that incident. That's about it." (*Id.* at 5.) Petitioner has failed to point to any objection that could have been made to the presentence report that had any meaningful likelihood of success and the Court is aware of none. Likewise, Petitioner has failed to articulate any argument that could have been made at sentencing by counsel that had any meaningful likelihood of resulting in a lighter sentence. Nor was there any reason to raise any of the arguments discussed herein on appeal, given that they were all frivolous. This ground for relief lacks merit.

### Ground Four

Petitioner next contends that he told his counsel to file a notice of appeal and that counsel failed to do so. (Docket Entry 63, Ground Four.) He alleges further that counsel

14

failed to consult with him about his appellate rights.  (*Id.*)  Counsel has filed an affidavit denying both these allegations.  (Docket Entry 92, Attach. 1.)

The Supreme Court has held that the dual performance and prejudice inquiry of *Strickland* provides the proper framework for analyzing a claim that counsel was ineffective for failing to file a notice of appeal or properly consult with a defendant regarding an appeal.  *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000).  Consultation about an appeal is constitutionally required "'when there is reason to think either . . . that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'"  *United States v. Cooper*, 617 F.3d 307 (4th Cir.) (quoting *Roe*, 528 U.S. at 480).  The Court in determining an ineffective assistance claim in the duty to consult context must decide whether Petitioner has shown: "(1) his attorney had a duty to consult under Flores-Ortega; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations."  *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

Moreover, unless the record "conclusively show[s]" a § 2255 petitioner is not entitled to relief, "the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  An evidentiary hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary in order to resolve the issue.  *See United States v. Witherspoon*, 231 F.3d 923, 925-27 (4th Cir. 2000).

15

Having reviewed the parties' pleadings, the Court finds that an evidentiary hearing will be required to resolve disputed and material issues of fact. A hearing will therefore be held as to whether counsel consulted with Petitioner about his appellate rights and whether Petitioner instructed counsel to file a notice of appeal.

## Motion to Amend

Petitioner has also filed a motion to amend. In it, he seeks to add a claim in reliance upon *United States v. Davis*, 139 S. Ct. 2319 (2019), and he has requested the appointment of counsel to represent him in connection with his amended claims. (Docket Entry 121.) Petitioner also asserts in the motion to amend that he did not possess a firearm. (Docket Entry 121 at 2.) The Court will grant this motion and permit Petitioner to amend his § 2255 motion.[3] However, as explained below, Petitioner's new arguments have no merit and should therefore be denied.

More specifically, Petitioner asserts that his conviction for violating 18 U.S.C. § 924(c), predicated on a crime of violence involving Hobbs Act robbery in violation of 18 U.S.C. § 1951, is no longer valid in light of subsequent decisions concerning the constitutionality of the definition of "crime of violence." (*Id.* at 4-7). Petitioner initially raised this argument in his reply to the Government's response to his motion, citing *Johnson v. United States*, 135 S. Ct. 2552 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). (Docket Entry 95 at 12-18.) Petitioner continues to advance this argument in his motion to amend.

---

[3] The Court will refer to Petitioner's new ground for relief as "Ground Five."

16

However, Petitioner's *Johnson*, *Dimaya*, and *Davis* ground for relief has no merit. Neither *Johnson* nor *Dimaya* address the specific statutory provision at issue here. *See Johnson*, 135 S. Ct. at 2552; *Dimaya*, 138 S. Ct. at 1204. It is true that in *Davis* the Supreme Court ruled that the definition of "crime of violence" found at 18 U.S.C. § 924(c)(3)(B) (the "residual clause"), is unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). However, because Petitioner's § 924(c) conviction was predicated on Hobbs Act robbery, which is a crime of violence under § 924(c)(3)(A) (the "force clause") Petitioner is not entitled to any relief. *See United States v. Mathis*, 932 F.3d 242 (4th 2019) ("Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)."). For this reason, Petitioner's amended ground fails.[4]

## Motion for Abeyance

The Government has also filed a motion requesting that this case be placed in abeyance pending the Supreme Court's resolution of *Mathis* to determine whether Hobbs Act Robbery is a crime of violence under § 924(c)(3)(A). (Docket Entry 122.) As explained above, *Mathis* has been resolved and Petitioner's amended ground for relief has no merit. Consequently, the Government's motion for abeyance is moot.

## Conclusion

For the reasons set forth above, an evidentiary hearing is warranted in this matter on Ground Four. Beyond this, Petitioner's remaining grounds are without merit.

---

[4] Petitioner's conclusory allegation that he never possessed or discharged a firearm also fails for reasons set forth elsewhere herein.

**IT IS THEREFORE ORDERED** that an evidentiary hearing be held on Petitioner's fourth ground for relief before the undersigned on **Tuesday, April 14, 2020, at 9:30 a.m. in Durham**. The only issue at the hearing will be the facts involving whether counsel failed to consult with Petitioner regarding an appeal and whether Petitioner instructed counsel to file an appeal. The Government is responsible for producing Petitioner at said hearing.

**IT IS FURTHER ORDERED** that **CJA Panel Attorney Brian Aus**, is hereby appointed to represent Petitioner at the evidentiary hearing.

**IT IS FURTHER ORDERED** that Petitioner's motion to amend (Docket Entry 121) be granted and that the Government's motion for abeyance (Docket Entry 122) be denied as moot.

**IT IS RECOMMENDED** that Grounds One through Three and Ground Five of Petitioner's amended motion to vacate, set aside or correct sentence (Docket Entry 63) be denied.

_____
Joe L. Webster
United States Magistrate Judge

January 30, 2020
Durham, North Carolina